```
                  IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF DELAWARE


  VIFOR FRESENIUS MEDICAL CARE    )
  RENAL PHARMA LTD., et al.,      )
                                  )
          Plaintiffs,             )
                                  ) C.A. No. 20-911(MN)
  v.                              )
                                  )
  TEVA PHARMACEUTICAL USA, INC.,  )
                                  )
          Defendant.              )


                         Wednesday, November 10, 2021
                         11:00 a.m.
                         Teleconference


                         844 King Street
                         Wilmington, Delaware


  BEFORE:   THE HONORABLE MARYELLEN NOREIKA
            United States District Court Judge



  APPEARANCES:


              FARNAN LLP
              BY:  MICHAEL FARNAN, ESQ.

              -and-

              QUINN EMANUEL URQUHART & SULLIVAN
              BY:  STEVEN CHERNY, ESQ.
              BY:  MATTHEW TRAUPMAN, ESQ.

                         Counsel for the Plaintiffs
```

```
 1   APPEARANCES CONTINUED:

 2

 3             SHAW KELLER LLP
               BY:  ANDREW E. RUSSELL, ESQ.
 4
               -and-
 5
               GREENBERG TRAURIG LLP
 6             BY:  RICHARD C. PETTUS, ESQ.

 7
                         Counsel for the Defendant
 8

 9                  - - - - - - - - - -
10

11             THE COURT:  Good morning, counsel.  Who is
12   there, please?
13             MR. FARNAN:  Good morning, Your Honor.  Michael
14   Farnan for the Plaintiff along with Steven Cherny and
15   Matthew Traupman from Quinn Emanuel.
16             THE COURT:  Good morning.
17             MR. RUSSELL:  Good morning, Your Honor.  This is
18   Andrew Russell from Shaw Keller for Defendant, Teva.  With
19   me on the line is Richard Pettus of Greenberg Traurig.
20             THE COURT:  Good morning to you as well.
21             So we have this motion to dismiss the
22   inequitable conduct claims and we have reviewed the papers.
23   And I wanted to give you all an opportunity to tell me
24   anything else that you think I should know.  I guess for the
25   Plaintiffs, I don't really understand how res judicata or
```

11:05:06 1 issue preclusion applies given that there has not been an
11:05:10 2 adjudication and the rules require an adjudication. I
11:05:14 3 understand what you're saying is that ultimately there will
11:05:17 4 be one, but there is not now. So I guess I need to
11:05:22 5 understand how it is you think I can say res judicata or
11:05:28 6 issue preclusion applies or are you really just saying they
11:05:32 7 should be allowed to get discovery on this because
11:05:36 8 ultimately one of those doctrines may apply?
11:05:44 9     MR. TRAUPMAN: Good morning, Your Honor. This
11:05:45 10 is Matt Traupman. And I would like to focus in response to
11:05:50 11 your question on issue preclusion because issue preclusion
11:05:53 12 as we noted --
11:05:55 13     THE COURT: I get, it doesn't require a
11:05:58 14 judgment, but it requires an adjudication. There is not
11:06:04 15 even a -- what is it that I am pointing to? What is it that
11:06:09 16 has been done that is a decision in this case that I could
11:06:12 17 point to?
11:06:14 18     MR. TRAUPMAN: For issue preclusion, Your Honor,
11:06:16 19 it is that Teva has included it in both their pleadings and
11:06:20 20 their pretrial order and yet presented no evidence at trial
11:06:24 21 or in the post-trial briefing.
11:06:26 22     THE COURT: And tell me why I didn't -- I get
11:06:29 23 it, I don't need to have a judgment entered. But why don't
11:06:32 24 I need some decision made? I don't have a decision. You're
11:06:35 25 pointing me to what Teva did. Where is a decision that has

11:06:43  1    been made that I can point to?
11:06:45  2                MR. TRAUPMAN:  Well, I agree with Your Honor
11:06:49  3    that there is no decision on that issue, but we don't
11:06:54  4    believe that issue preclusion requires such decision.  And
11:07:00  5    I'm quoting in particular from the *Free Speech* case that we
11:07:03  6    cited on page 3 of our reply brief where the Third Circuit
11:07:08  7    emphasizes the compliant nature of issue preclusion.  And
11:07:12  8    I'm quoting here, "Finality may mean little more than
11:07:16  9    litigation of a particular issue has reached such a state
11:07:19 10    that the Court really sees no good reason for permitting it
11:07:23 11    to be litigated again."
11:07:26 12                I certainly think from that under that standard
11:07:29 13    set forth in the *Free Speech* case in the Third Circuit that
11:07:32 14    is the situation we have here, Your Honor.  There is no
11:07:35 15    doubt what is going to happen with the inequitable conduct
11:07:38 16    in the '401 and that it is the same issue, it's the exact
11:07:42 17    same prosecution of the '251 Patent.  And yet as I said, we
11:07:46 18    agree with Your Honor there is no decision, but the issue
11:07:49 19    has been fully adjudicated and fully heard.
11:07:57 20                THE COURT:  What was the stage of it, what was
11:08:00 21    the issue?  I mean, as I read the *Free Speech* case we
11:08:04 22    weren't in the same boats that we're in here.  So how is
11:08:10 23    that -- I get it with what the language says, but tell me
11:08:15 24    factually how that's the same.
11:08:18 25                MR. TRAUPMAN:  I think the principle that *Free*

*Speech*, the *Free Speech* case is articulating, Your Honor, is again the issue has been fully heard, fully litigated. And I think the point, Your Honor, is that --

THE COURT: Tell me exactly how this compares to the *Free Speech*, the facts of the *Free Speech* case. It says prior adjudication must be sufficiently firm. I don't even have an adjudication, let alone something that's firm. I get it that ultimately when I issue my decision and we have a final judgment that there will be an adjudication, but you're using language from the *Free Speech*. What I'm asking you is tell me exactly what the facts were in the *Free Speech* case that you think are analogous to what we have here.

MR. TRAUPMAN: Well, Your Honor, I think I will admit the facts are different between the *Free Speech* case and what we have here. And we haven't been able -- we haven't been able to find an analogous situation to the one we have here. But again, we think the -- in *Free Speech*, there was change in the record, but it didn't affect the outcome of the core issue that had already been litigated. That is again, there were admitted differences to the situation we have here. Again, there is no -- there is -- the principle of the *Free Speech* case is that not to promote form over substance, that when an issue has been fully heard --

11:10:06 1     **THE COURT:** Yeah, I don't view following the
11:10:10 2  requirements of the rule as elevating form over substance.
11:10:16 3  Why don't you go to the second part of your argument which
11:10:19 4  is that it has not been sufficiently pleaded.
11:10:22 5     **MR. TRAUPMAN:** Yes, Your Honor. And this just
11:10:25 6  goes to the standard for infectious unenforceability. And
11:10:31 7  under the case law that Teva cites, the *Garden* case, but all
11:10:36 8  of the case law is pretty uniform that there needs to be a
11:10:40 9  relationship plus facts between the equitable conduct that
11:10:45 10 occurred in the parent case, and I should be precise, Your
11:10:49 11 Honor, it is an immediate and necessary relationship under
11:10:52 12 the case law between the inequitable conduct that occurred
11:10:55 13 in the parent patent and the claim, and it's important to
11:10:59 14 say between the claims and the prosecution, but the claim of
11:11:02 15 the children application. And that's what the legal
11:11:05 16 standard for infectious unenforceability is.
11:11:10 17    And here, Your Honor, we have a pleading that is
11:11:13 18 completely devoid of any attempt to tie the alleged
11:11:17 19 inequitable conduct of the '251 Patent to the claims of any
11:11:22 20 of the three asserted patents in this case.
11:11:25 21    **THE COURT:** What do you think about Teva's
11:11:28 22 argument about well, look, we gave you the claim of the '251
11:11:32 23 Patent, and it's similar, you know, to the claim of one of
11:11:36 24 the patents-in-suit?
11:11:40 25    **MR. TRAUPMAN:** Well, Your Honor, I think the

claims of the patents-in-suit are -- there are fairly substantial differences, but I also think that such an argument falls very far short of a pleading standard under Rule 9(b) which as Your Honor knows is what is applicable to inequitable conduct. Simply reciting -- all they did was copy in a background section the claim 1 of the three patents. Again, under the legal standard that's set forth in all of these cases, for an immediate and necessary relationship, we don't think that comes even remotely close.

And I have to talk about some of the specifics -- I mean, they're pleading in both '401 and with respect to the '291 Patent here is limited to claim 1 of the '251 Patent where claim 1 of the '251 Patent doesn't recite any particular dosage form. Here just as a for instance and the difference between the claims, all three of the asserted claims are limited to chewable tablets. Likewise the claim in claim 1 is that they cite in their pleadings was a chewable tablet. Likewise claim 1 of the '251 Patent requires at least 500 milligrams of iron oxide-hydroxide. Here the claim requires about 800 milligrams or about 700 to 1,700 milligrams.

They also between the two patents a limitation requiring that at least 70 percent of the dosage form be glucose ferric oxide-hydroxide. There is no limitation anywhere in the '251 Patent. We think there is lots of

11:13:15  1    differences between the claims here, and at a minimum, Teva
11:13:19  2    was required to plead something that could tie the alleged
11:13:23  3    inequitable conduct in the '251 Patent to the claims, being
11:13:27  4    very precise to the claims at issue here.
11:13:29  5                 THE COURT:  Got it.  So, Mr. Pettus, let me hear
11:13:32  6    from you.  I mean, I take your point that we don't have an
11:13:38  7    adjudication on the merits of the issue from the '251
11:13:44  8    Patent, but I mean, we're going to at some point; right?  I
11:13:50  9    suppose technically a judgment could be entered on that
11:13:54 10    issue because Teva raised the issue in the pretrial order
11:13:59 11    and failed to put on any proof.  So why are we dealing with
11:14:05 12    this whether we call it res judicata or res judicata coming
11:14:11 13    in the future or issue preclusion coming in the future, what
11:14:16 14    are we doing?
11:14:17 15                 MR. PETTUS:  So, Your Honor, again, we didn't
11:14:20 16    contest that in this case that there would be instances of
11:14:27 17    potentially res judicata against us and also against the
11:14:32 18    Plaintiffs potentially with the claims they're continuing to
11:14:35 19    assert.
11:14:36 20                 What makes this, you know, different, and where
11:14:43 21    res judicata or issue preclusion has to apply, and I'm not
11:14:46 22    going to address -- it sounds like I can meet the whole
11:14:50 23    point about a final judgment or decision, but are identical
11:14:54 24    or exact issues.  And there is some new subject matter in
11:14:58 25    this pleading and different subject matter, and that's the

11:15:02  1    infectious enforceability.
11:15:04  2            And part of that which is new and different
11:15:06  3    which the Plaintiffs didn't address at all and is pled
11:15:10  4    multiple times is what Judge Burke in *Rohm & Haas* case that
11:15:16  5    he cites and *ESleep* case that's also cited in the *Garden*
11:15:21  6    decision raise in terms of the duty to cure a correct.  So
11:15:26  7    the underlying misstatements or misleading statements have
11:15:32  8    been left, they're on notice that they have been accused of
11:15:37  9    these misleading enforced statements and then they went
11:15:42 10    forward in multiple -- there is three times in suit here,
11:15:47 11    but there are multiple patents that are listed.  We're only
11:15:50 12    facing three.
11:15:51 13            And they took no steps whatever to correct,
11:15:54 14    address, or cure, and the *Garden* case, and again the Federal
11:16:02 15    Circuit *Rohm & Haas* that it cites is very clear that there
11:16:04 16    is a duty that arises.
11:16:06 17            And so it becomes -- it's a continuing tort but
11:16:11 18    it becomes a new tort.  And that duty is tied by the *Rohm &*
11:16:17 19    *Haas* case, *ESleep* case to the duty of candor that continues
11:16:22 20    on.
11:16:25 21            So in our view at the very least those claims
11:16:29 22    should go forward.  They are new and different aspects to
11:16:34 23    the inequitable conduct that shouldn't be subject to a res
11:16:42 24    judicata ruling.  And so I can stop there and if Your Honor
11:16:46 25    wants to ask follow-up questions.

11:16:50  1              THE COURT:  No, that's fine.  But what about the
11:16:53  2   pleading?  I mean, it seems like -- I got to say in your
11:16:57  3   brief, I mean, the pleading when I read it is pretty much
11:17:00  4   all about what happened in the parent and you had one
11:17:04  5   paragraph that says oh, and then you fixed it.  And in your
11:17:08  6   papers you kind of go back and say well look, we put the
11:17:12  7   claims there, and they had the same specification, but it
11:17:16  8   really -- I mean, if the standard is that there is an --
11:17:21  9   what is it, immediate and necessary relation, and I don't
11:17:28 10   really see where you pleaded that.  So help me with that.
11:17:33 11              MR. PETTUS:  Sure, Your Honor.  And so you're
11:17:36 12   right, the standard is an immediate and necessary relation.
11:17:40 13   But I think it's important to look at the cases and see what
11:17:45 14   does that relation need to be.  It's obviously between the
11:17:48 15   inequitable conduct, but it's not the claims of the new
11:17:52 16   patents.  And that's made very clear.
11:17:55 17              And I will apologize to Your Honor, I think we
11:17:58 18   might have confused the issue a little bit by addressing the
11:18:03 19   Plaintiffs' argument, almost as like a backup.  We addressed
11:18:07 20   the claims anyway, but that's not the standard.  The
11:18:10 21   standard is to the enforcement of the patents-in-suit.  And
11:18:14 22   if you go to the *Garden* case and the *Robocast* case, which is
11:18:20 23   a Judge Andrews decision that Judge Burke cites both of
11:18:27 24   them, they do a pretty detailed analysis of this issue.  And
11:18:31 25   their point that they make very clearly is it can't be --

11:18:35  1   when you talk about infectious enforceability, it can't be a
11:18:43  2   relationship that is shown between the inequitable conduct
11:18:47  3   and the claims.  And Judge Andrews says if that were the
11:18:50  4   case, if it has to have a causal effect on the claims at
11:18:53  5   issue, that would render the doctrine of infectious
11:18:57  6   enforceability inapplicable.
11:19:00  7             And what he goes on to say is that to hold
11:19:04  8   otherwise would fly in the face of the rule that inequitable
11:19:09  9   conduct when it's argued with respect to one claim or two
11:19:14 10   claims and there could be twenty claims in a patent or a
11:19:18 11   follow-on patent, but it applies in terms of
11:19:22 12   unenforceability to all the claims.
11:19:24 13             And so if we were to now -- and it's just not
11:19:28 14   the standard, if we were to now apply that standard and say
11:19:33 15   well, you have to show that it applies directly to these
11:19:36 16   claims, that's what Judge Andrews very clearly says couldn't
11:19:40 17   be the case in this instance.
11:19:42 18             And what both courts look at, and again, this is
11:19:47 19   -- I'm not going to tell you that it's a bright line, it's
11:19:51 20   an area of law that doesn't come up that much, but they
11:19:54 21   analyzed it, and what they looked at, Judge Andrews in
11:20:01 22   *Robocast*, again, he said what the inequitable conduct
11:20:06 23   infects under this doctrine is the invention itself and all
11:20:11 24   the claims which form a part of that invention.  And where
11:20:13 25   he draws distinction is if you have later points of patents

```
11:20:17  1    that are a division of which in patent law it means, it's
11:20:24  2    really claiming a different invention, then there may not be
11:20:28  3    that immediate and necessary relation.  But where you have
11:20:31  4    continuation application, those are, you know, under the
11:20:36  5    patent law --
11:20:37  6                THE COURT:  But where did you plead anything
11:20:40  7    about the relation between the inventions?  You set out
11:20:45  8    claims.  I don't see that you tied the inventions together.
11:20:51  9    Tell me, point me to a paragraph that you're relying on in
11:20:57 10    your pleading so I can take a look at it.
11:21:00 11                MR. PETTUS:  Sure.  Two examples.  One is where
11:21:02 12    we -- you know, we identify these patents-in-suit as
11:21:08 13    claiming priority back to, you know, the '251 and the
11:21:15 14    priority application, and that's in paragraph 99.  And then
11:21:18 15    in paragraph 2, we identify, again, this '251 Patent, as the
11:21:24 16    parent application.
11:21:25 17                THE COURT:  I'm sorry, which was the second
11:21:27 18    paragraph you pointed me to?
11:21:29 19                MR. PETTUS:  I'm sorry, Your Honor, I'm speaking
11:21:31 20    too fast.  Paragraph 2 and paragraph 99.
11:21:37 21                THE COURT:  Okay.  Anything else?
11:21:40 22                MR. PETTUS:  It is repeated, it is the same
11:21:43 23    statement.  I think both of those are repeated in other
11:21:46 24    paragraphs such as paragraph 88 where we again say the '251
11:21:52 25    is a parent patent to each of the patents-in-suit.
```

```
11:22:03   1                THE COURT:  All right.  Go ahead.
11:22:05   2                MR. PETTUS:  I was just going to say, there is
11:22:08   3   just no dispute, these are continuation, the specifications
11:22:12   4   are identical, the abstracts are identical.  That's on the
11:22:17   5   face of the patents.  Those are part of the pleadings that
11:22:21   6   Your Honor can consider.  And we have made note of that in
11:22:27   7   our briefs.
11:22:28   8                You know, they were also terminal disclaims
11:22:32   9   which means it's not an admission that the claims are
11:22:35  10   identical but that again they fit within the standard and
11:22:39  11   it's something else that the courts consider as a factor.
11:22:43  12                THE COURT:  But I mean, inequitable conduct, you
11:22:47  13   have to plead it with particularity and it seems like you're
11:22:51  14   asking me to read an awful lot into some pretty scant
11:22:56  15   pleadings.
11:22:58  16                MR. PETTUS:  Your Honor, what I would say to
11:23:05  17   that is we do feel it's sufficient.  And what the cases,
11:23:10  18   including *Garden* and -- you know, we don't disagree, in that
11:23:15  19   case Judge Burke considered a number of factors, but he used
11:23:20  20   some very strong language in terms of just this point of it
11:23:24  21   being a continuation.  And the language he used is that when
11:23:29  22   you have a later continuation patent, it will almost surely
11:23:34  23   be found to bear an immediate and necessary relation.  And
11:23:37  24   that's what we have here with all three of the
11:23:39  25   patents-in-suit.
```

```
11:23:40  1              And he goes on, and again, separately but
11:23:44  2   together looks at has there been a claim of priority, and
11:23:49  3   that also helps to establish the immediate and necessary
11:23:53  4   relation.
11:23:55  5              And again, we feel we adequately pled that.  And
11:24:00  6   under the Robocast and Garden analyses, these patents should
11:24:06  7   be subject to the infectious enforceability claim.
11:24:10  8              THE COURT:  All right.  So thanks for the
11:24:15  9   arguments.  I am going to grant the motion.  Defendant
11:24:18 10   asserts infectious inequitable conduct from the parent, the
11:24:23 11   '251 Patent.  And first I note that the parties have already
11:24:27 12   litigated the parent patent and although Teva asserted
11:24:31 13   inequitable conduct and raised that as an issue in the
11:24:34 14   pretrial order, it did not offer any proof at trial on that
11:24:37 15   issue.  I have not yet issued a decision in that case, but
11:24:41 16   any claim of inequitable conduct will be dismissed when I
11:24:44 17   do.
11:24:44 18              I don't think, however, that I can grant this
11:24:46 19   motion on res judicata or issue preclusion as Plaintiffs
11:24:50 20   request because there has not yet been an adjudication of
11:24:54 21   inequitable conduct.  And I don't view it as elevating form
11:24:58 22   over substance to require adjudication.
11:25:01 23              As to the pleading standard, I agree with
11:25:04 24   Plaintiffs.  Defendant's pleading is essentially entirely
11:25:06 25   about what happened in the parent prosecution with a final
```

allegation that the patentee did not attempt to address or cure the omissions or misleading statements. In its papers and today, Teva argues that there is more in that pleading in that in other places in the pleading links the subject matter claimed in the parent with that claimed in the patents at issue here. All that Teva did, however, is copy and paste claims from the two patents. Infectious enforceability, however, requires more. It requires pleading an immediate and necessary relation between the inequitable conduct at issue and the claims alleged to be infected. Sharing a patent application, sharing similarities and subject matter, claiming priority are not sufficient to automatically suggest infectious enforceability. Teva has not traced specific claim elements in the patents-in-suit back to the parent. It has not met the pleading standard here and I will grant the motion to dismiss.

Now, I am doing that without prejudice, but it seems silly at this point to ask for re-pleading when we are going to have a decision in the '251 Patent coming up that requires me to revisit the res judicata and issue preclusion issue. So what I think we should do is that after we issue our decision and we have a judgment on the '251 Patent, if Defendant wants to try to re-plead it, it should discuss that with Plaintiffs. And I suppose if they can't agree,

```
11:26:41   1   Defendant can use my procedure for seeking leave to amend
11:26:46   2   and we can talk about amending its answer and counterclaims
11:26:50   3   to allege infectious inequitable conduct and we will figure
11:26:55   4   out then if it is adequately pleaded and whether it is
11:26:59   5   barred by the prior adjudication.
11:27:02   6              So that's where I am on the motion.  The motion
11:27:05   7   is granted.
11:27:07   8              Is there any question or anything else we need
11:27:09   9   to discuss at this point?
11:27:11  10              Mr. Traupman?
11:27:13  11              MR. TRAUPMAN:  Not for Plaintiffs, Your Honor.
11:27:14  12              THE COURT:  Mr. Pettus?
11:27:16  13              MR. PETTUS:  No, Your Honor.
11:27:17  14              THE COURT:  All right.  Thanks everyone.  Have a
11:27:19  15   good rest of the week.
11:27:21  16              MR. PETTUS:  You, too.  Thank you.
11:27:24  17              MR. TRAUPMAN:  Thank you, Your Honor.
          18              (Teleconference concluded at 11:27 a.m.)
          19
          20
          21          I hereby certify the foregoing is a true and
                 accurate transcript from my stenographic notes in the proceeding.
          22
          23                          /s/ Dale C. Hawkins
                                      Official Court Reporter
          24                          U.S. District Court
          25
```