## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VIFOR FRESENIUS MEDICAL CARE )
RENAL PHARMA LTD. and VIFOR )
FRESENIUS MEDICAL CARE RENAL )
PHARMA FRANCE S.A.S., )
                            )    C.A. No. 20-911 (MN)
         Plaintiffs, )
                            )
   v. )
                            )
TEVA PHARMACEUTICALS USA, INC., )
                            )
         Defendant. )
                            )
                            )

## JOINT [PROPOSED] FINAL PRETRIAL ORDER

The following matters as to trial come before the Court at a final pretrial conference to be held on June 21, 2022 at 10:00 a.m. ET, pursuant to Rule 16 of the Federal Rules of Civil Procedure. The parties in this lawsuit are Plaintiffs and Counterclaim-Defendants Vifor Fresenius Medical Care Renal Pharma Ltd. ("VFMCRP Switzerland") and Vifor Fresenius Medical Care Renal Pharma France S.A.S. ("VFMCRP France") (together, "Plaintiffs" or "Vifor Fresenius"), and the Defendant and Counterclaim-Plaintiff is Teva Pharmaceuticals USA, Inc. ("Teva" or "Defendant"). Pursuant to Local Rule 16.3, Plaintiffs and Defendant hereby submit for the Court's approval this proposed Final Pretrial Order governing the above captioned bench trial commencing on June 27, 2022 at 09:30 a.m. ET.

Dated: June 6, 2022

Respectfully submitted,

FARNAN LLP

SHAW KELLER LLP

/s/ Michael J. Farnan
Brian E. Farnan (No. 4089)
Michael J. Farnan (No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiffs Vifor Fresenius
Medical Care Renal Pharma Ltd. and Vifor
Fresenius Medical Care Renal Pharma
France S.A.S.*

*Attorneys for Defendant Teva
Pharmaceuticals USA, Inc.*

## TABLE OF CONTENTS

Page

I.  NATURE OF CASE ................................................................................1

    A.  Nature of the Action.......................................................................1

    B.  Plaintiffs' Complaints and Defendant's Answers and
        Counterclaims ...............................................................................1

    C.  Other Prior Related Proceedings, including Claim Construction .............4

    D.  Case Streamlining ........................................................................5

    E.  Pending Motions ..........................................................................9

II.  FEDERAL JURISDICTION .................................................................9

III.  FACTS ...............................................................................................10

    A.  Uncontested Facts .......................................................................10

    B.  Contested Facts ...........................................................................10

IV.  ISSUES OF LAW THAT REMAIN TO BE LITIGATED ...............................10

V.  BRIEF STATEMENT OF INTENDED PROOFS ...........................................11

VI.  WITNESSES......................................................................................11

    A.  List of Witnesses the Parties Expect to Call ...........................................11

    B.  Testimony by Deposition.......................................................................13

    C.  Objections to Expert Testimony .............................................................16

    D.  Stipulation as to Qualifications of *Velphoro I* Expert Witnesses
        Who Testified at Trial........................................................................17

VII.  EXHIBITS ........................................................................................17

    A.  Exhibits .....................................................................................17

    B.  Demonstrative Exhibits..........................................................................20

VIII.  BIFURCATED TRIAL.........................................................................22

IX.  MOTIONS IN *LIMINE* .....................................................................23

X.      DISCOVERY .......................................................................................................23

XI.     NUMBER OF JURORS ......................................................................................23

XII.    NON-JURY TRIAL .............................................................................................23

XIII.   LENGTH OF TRIAL ..........................................................................................24

XIV.    COURTROOM LIVESTREAM ..........................................................................25

XV.     AMENDMENTS OF THE PLEADINGS ...........................................................25

XVI.    SETTLEMENT .....................................................................................................26

# INDEX OF EXHIBITS

**STATEMENT OF UNCONTESTED FACTS WHICH REQUIRE NO PROOF**

| | |
|---|---|
| Joint | Exhibit 1 |

**STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED**

| | |
|---|---|
| Plaintiffs | Exhibit 2 |
| Defendant | Exhibit 3 |

**STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

| | |
|---|---|
| Plaintiffs | Exhibit 4 |
| Defendant | Exhibit 5 |

**BRIEF STATEMENT OF INTENDED PROOF**

| | |
|---|---|
| Plaintiffs | Exhibit 6 |
| Defendant | Exhibit 7 |

**TRIAL WITNESSES**

| | |
|---|---|
| Plaintiffs | Exhibit 8 |
| Defendant | Exhibit 9 |

**DEPOSITION DESIGNATIONS**

| | |
|---|---|
| Plaintiffs | Exhibit 10 |
| Defendant | Exhibit 11 |

**TRIAL EXHIBITS**

| | |
|---|---|
| Joint | Exhibit 12 |
| Plaintiffs | Exhibit 13 |
| Defendant | Exhibit 14 |

***MOTIONS IN LIMINE***

| | |
|---|---|
| Plaintiffs' MIL 1 | Exhibit 15 |
| Plaintiffs' MIL 2 | Exhibit 16 |
| Plaintiffs' MIL 3 | Exhibit 17 |
| Defendant's MIL 1 | Exhibit 18 |
| Defendant's MIL 2 | Exhibit 19 |
| Defendant's MIL 3 | Exhibit 20 |

## I.     NATURE OF CASE

### A.     Nature of the Action

1.     Plaintiffs filed this action for infringement of United States Patent Nos. 10,682,376 "(the '376 patent"), 10,695,367 ("the '367 patent"), and 11,013,761 ("the '761 patent") (collectively, "the patents-in-suit"). This action ("*Velphoro II*") arises under the patent laws of the United States, Title 35, United States Code, § 100 *et seq.*, and in particular under 35 U.S.C. § 271(e). It relates to Defendant's Abbreviated New Drug Application ("ANDA"), which Defendant filed or caused to be filed under 21 U.S.C. § 355(j) with the United States Food and Drug Administration ("FDA") seeking approval to market a generic version of Plaintiffs' VELPHORO® before the expiration of the patents-in-suit.

2.     The patents-in-suit are all related to, and within the same patent family as, U.S. Patent No. 9,561,251 ("the '251 patent"), which is the subject of the co-pending litigation that was tried to this Court on January 19-22, 2021. *See Vifor Fresenius Med. Care Renal Pharma Ltd. v. Lupin Atlantis Holdings SA*, C.A. 18-390-MN (D. Del. Sept. 5, 2019). ("*Velphoro I*").  Post-trial briefing is complete in that matter and the parties are awaiting a decision from the Court.

3.     Defendant filed declaratory judgment counterclaims against Plaintiffs alleging invalidity and non-infringement of the patents-in-suit. (D.I. 67.)

### B.     Plaintiffs' Complaints and Defendant's Answers and Counterclaims

4.     After listing the patents-in-suit in the Orange Book for Velphoro®, Plaintiffs brought suit against Teva for infringement of the '376 and '367 patents on July 6, 2020 based on Teva's prior filing of ANDA No. 211411 ("Teva's ANDA") seeking approval to market a generic version of VELPHORO®. (D.I. 1.)

5.     On July 28, 2020, Teva filed its Answer and Counterclaims in response to Plaintiffs' original Complaint. (D.I. 13.) Teva asserted affirmative defenses of non-infringement;

invalidity and/or unenforceability for failing to comply with one or more requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112; non-infringement based on the reverse doctrine of equivalents; collateral estoppel, waiver, unclean hands, and/or other equitable doctrines. Teva's other affirmative defenses alleged that Plaintiffs are barred under 35 U.S.C. § 288 from recovering costs in connection with this action, that Plaintiffs are not entitled to injunctive relief, and that Plaintiffs had failed to allege facts sufficient to state a claim against Teva upon which relief may be granted. Teva further asserted counterclaims against Plaintiffs, seeking a declaratory judgment of non-infringement and that the claims of the '376 and '367 patents are invalid.

6.      On August 18, 2020, Plaintiffs filed their Answer to Teva's Counterclaims (D.I. 16), which had been pled in response to Plaintiffs' original Complaint, denying the substantive allegations and each claim for relief.

7.      Plaintiffs filed a First Amended Complaint on November 25, 2020 indicating a change in ANDA ownership for prior Defendants Lupin Pharmaceuticals, Inc., Lupin Limited, and Lupin Inc., who are no longer parties to this litigation pursuant to dismissal ordered December 18, 2020. (D.I. 25, 30.)

8.      On December 9, 2020, Teva filed its Answer and Counterclaims in response to Plaintiffs' First Amended Complaint. (D.I. 27.) Teva asserted affirmative defenses of non-infringement; invalidity and/or unenforceability for failing to comply with one or more requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112; non-infringement based on the reverse doctrine of equivalents; collateral estoppel, waiver, unclean hands and/or

other equitable doctrines. Teva's other affirmative defenses alleged that Plaintiffs are barred under 35 U.S.C. § 288 from recovering costs in connection with this action; that Plaintiffs are not entitled to injunctive relief; and that Plaintiffs had failed to allege facts sufficient to state a claim against Teva upon which relief may be granted. Teva further asserted counterclaims against Plaintiffs seeking a declaratory judgment of non-infringement and that the claims of the '376 and '367 patents are invalid.

9.      On December 30, 2020, Plaintiffs filed their Answer to Teva's Counterclaims (D.I. 35), which had been pled in response to Plaintiffs' First Amended Complaint, denying the substantive allegations and each claim for relief.

10.     Plaintiffs filed a Second Amended Complaint on June 24, 2021 for infringement of, in addition to the '376 and '367 patents, the '761 patent based on Teva's filing of the Teva ANDA. (D.I. 61.)

11.     On July 8, 2021, Teva filed its Answer and Counterclaims in response to Plaintiffs' Second Amended Complaint. (D.I. 67.) Teva asserted affirmative defenses of non-infringement; invalidity and/or unenforceability for failing to comply with one or more requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112; non-infringement based on the reverse doctrine of equivalents; collateral estoppel, waiver, unclean hands, and/or other equitable doctrines. Teva's other affirmative defenses alleged Plaintiffs are barred under 35 U.S.C. § 288 from recovering costs in connection with this action; Plaintiffs are not entitled to injunctive relief; Plaintiffs failed to allege facts sufficient to state a claim against Teva upon which relief may be granted; and that Plaintiffs' claims for relief are or will be limited or barred by issue preclusion and/or claim preclusion. Teva further asserted counterclaims against Plaintiffs seeking a

declaratory judgment of non-infringement of the patents-in-suit including the newly-added '761 patent, as well as for judgment that the claims of the '376 and '367 patent, and newly-added '761 patent, are invalid, and a judgment of unenforceability due to inequitable conduct.

12.    Regarding Defendant's inequitable conduct counterclaims, Plaintiffs moved to dismiss for failure to state a claim (D.I. 80, 81), and Plaintiffs' motion was granted. Nov. 10, 2021 Minute Entry; D.I. 161 at 16:6-7.

13.    On March 10, 2022, Plaintiffs answered all counterclaims, except claims of inequitable conduct, denying the substantive allegations and each claim for relief.[1] (D.I. 221).

**C.    Other Prior Related Proceedings, including Claim Construction**

14.    On September 5, 2019, the Court issued a Memorandum Opinion and Order in the *Velphoro I* litigation concerning the '251 patent, which construed four disputed terms in the '251 patent. *Vifor Fresenius Med. Care Renal Pharma Ltd. v. Lupin Atlantis Holdings SA*, C.A. 18-390-MN, D.I. 114 (D. Del. Sept. 5, 2019). The parties agreed to apply, for the purpose of this *Velphoro*

---

[1] Fact discovery closed in *Velphoro II* on November 12, 2021 (D.I. 133), and expert discovery closed in *Velphoro II* on March 7, 2022 (D.I. 219). Teva contends that Plaintiffs' Answer was untimely because it was filed more than four (4) months after the Court granted Plaintiffs' motion to dismiss one of the seven counterclaims, and after the close of discovery without seeking leave of court as required by the rules. *See* Fed. R. Civ. P. 6(b) and 12(a)(4)(A). Teva further contends that the counterclaims to which Plaintiffs responded in their late pleading should be deemed admitted.

Plaintiffs disagree that Plaintiffs' answer was untimely. The Court Order granting Plaintiffs' Motion to Dismiss did not trigger any additional deadlines for Plaintiffs under Rule 12. It was incumbent upon Teva, not Plaintiffs, to file an amended pleading that comports with the Court's order and removes the material that the Court determined failed to state a claim. Teva failed to do so. Furthermore, Teva did not move to strike Plaintiffs' Answer, so Teva's objection has been waived. Moreover, a footnote in the Pretrial Order cover pleading is not an appropriate vehicle for seeking case dispositive relief. Finally, issues should be decided on the merits, not technicalites. *E.g.*, *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (stating "preference that cases be disposed of on the merits whenever practicable"); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990) (recognizing preference that "a particular claim will be decided on the merits rather than on technicalities").

*II* District Court proceeding,[2] the constructions adopted by the Court for two of the terms construed in *Velphoro I*: "essentially non-bioabsorbable" and "iron release rate below 2.5% w/w." (D.I. 41.)

15.     On June 7, 2021, the parties resolved the remaining claim construction dispute and agreed, for purposes of this action, to adopt Plaintiffs' proposed construction for the term "superdisintegrants." (D.I. 53.)

### D.     Case Streamlining

16.     On November 22, 2021, the Court entered the parties' stipulation that Plaintiffs would "reduc[e] the total number of asserted claims to no more than ten asserted claims" and Teva would "reduc[e] the total number of prior art references (relied upon for all purposes including, inter alia, 'background' and motivation to combine/reasonable expectation of success) to no more than twelve prior art references."  (D.I. 170.)

17.     The parties disagree over the interpretation of D.I. 170.  The parties have been unable to reach agreement on a further narrowing of asserted claims and references including for the reasons set forth below.

#### 1.     Teva's Position

18.     It is Teva's position that the reduction in the total number of prior art references pursuant to D.I. 170 was limited to prior art-based invalidity defenses (namely, anticipation and obviousness). Consistent with standard case narrowing practice in the District of Delaware, the Parties' agreement set forth in D.I. 170 was intended to reduce the number of prior art references relied upon to show anticipation and/or obviousness. Teva submitted expert reports consistent with

---

[2] Pursuant to the parties' agreement, Teva reserved the right to appeal the Court's decision as to the indefiniteness of certain claim terms from the patent asserted in *Velphoro I*. To the extent those same terms appear in the patents-in-suit in *Velphoro II*, Teva similarly reserves its right to appeal. Plaintiffs disagree that Teva has any independent basis to appeal the indefiniteness issues in *Velphoro II*.

this understanding and the parties proceeded through full expert discovery and depositions, with Plaintiffs having never asserted that this case narrowing agreement somehow extended to other contexts such as rebutting secondary considerations, showing lack of enablement, and even infringement, etc.. However, now, just weeks before trial, Plaintiffs seek to take advantage of a newly asserted ambiguity in D.I. 170 to try to preclude Teva from, *inter alia*, discussing prior products to rebut alleged secondary considerations (e.g., long-felt need, unexpected results, etc.), to discuss additional references in the context of technology tutorials, and/or for purposes of §112. Plaintiffs' newly asserted interpretation of D.I. 170 is at odds with the Parties' dealings to date as well as standard case narrowing practice in patent infringement lawsuits in District of Delaware. *See Nuance Communications, Inc., v. MModal LLC, et al*., C.A. No. 17-1484-JFB-SRF (D. Del. Aug. 3, 2018) (D.I. 82 at 2 n. 3) (Case narrowing agreement does not apply to references "used to illustrate the state of the art, the knowledge possessed by a person of ordinary skill, to address alleged secondary considerations, or for other context surrounding obviousness that is commonly introduced in a patent trial."); *Leo Pharma A/S et al., v Actavis Laboratories UT, Inc*., C.A. No. 16-33-JFB-SRF (D. Del. Mar. 29, 2018) (D.I. 287) (same).

19.     Nonetheless, in efforts to reduce the burden on both parties and the Court, in April 2022, Teva further proposed that Plaintiff will immediately identify five (5) claims that it will pursue at trial; and within one (1) business day, Teva will identify (i) six (6) prior art references that it will use in its invalidity combinations for the purposes of obviousness. Teva further pointed out that, pursuant to D.I. 170, it had already agreed to limit itself to twelve (12) total prior references that it will use to show obviousness[3] (i.e., including state of the art, motivation to combine, and reasonable expectation of success). Plaintiffs rejected Teva's proposals because,

---

[3] Teva is not pursuing an anticipation defense in this *Velphoro II* action.

according to Plaintiffs, "Teva's proposal will not reduce the work at trial necessary to present and respond to Teva's invalidity case…" [4/18/2022 email from Geoff Kirsner]. Teva is unclear as to how its proposed reduction to six prior art references for its combinations (as was done in Velphoro I) would not reduce the burdens on Plaintiffs. To further attempt a compromise, on June 1, 2022, Teva proposed a similar agreement that would limit the number of asserted claims to four (4) and references for combinations to six(6) (as in Velphoro I), but with the additional reduction in the total number of references to be used for purposes consistent with D.I. 170 to ten (10). In a subsequent meet-and-confer, Plaintiffs refused to agree to Teva's proposed compromise and informed Teva, for the first time, that they even intended to enforce D.I. 170 to preclude Teva from discussing references in the context of Teva's defenses under 35 U.S.C. 112 (e.g., enablement, written description)[4]. Plaintiffs have not cited any precedent in the District of Delaware for such a restriction, nor is Teva aware of any. Plaintiffs' newly asserted interpretation of D.I. 170 would be highly prejudicial to Teva's defense against Plaintiffs' claims of infringement.

### 2.    Plaintiffs' Position

20.    Plaintiffs believe that D.I. 170 is clear—Teva agreed to "reduc[e] the total number of prior art references [] relied on **for all purposes**" to twelve, without any limitation on the phrase "all purposes." Accordingly, Teva's position that the phrase "all purposes" only includes references "relied upon to show anticipation and/or obviousness" is without merit. "All purposes" covers any purpose, including "background," as expressly stated in D.I. 170, and any "technology tutorial" that Teva intends to present. Allowing for an unlimited number of references for background purposes is counterproductive to the narrowing process. Teva's reference to two

---

[4] Plaintiff went so far as to refuse to confirm whether they view D.I. 170 as also applying to *infringement* issues.

Judge Bataillon cases by one visiting judge as reflecting the "standard case narrowing practice in patent infringement lawsuits in District of Delaware" is without merit. Those two case narrowing orders have a fundamentally different structure from the order in this case. In those two cases, the streamlining order contained a limit both on the number of prior art references and the number of "prior art arguments." *See Nuance Communications, Inc., v. MModal LLC, et al*., C.A. No. 17-1484-JFB-SRF (D. Del. Aug. 3, 2018) (D.I. 82 at 2 n. 4); *Leo Pharma A/S et al., v Actavis Laboratories UT, Inc*., C.A. No. 16-333-JFB-SRF (D. Del. Mar. 29, 2018) (D.I. 287). Accordingly, the case narrowing order in those cases contemplated much higher numbers of prior art references and prior arguments, e.g., 45 references and 125 prior arguments in *Nuance*. In contrast, the parties here did not limit the number of prior art arguments, just the total number of prior art references. And, critically, the orders in those cases does not contain the for "all purposes" language agreed to the parties here. Indeed, by permitting background references "illustrat[ing] the state of the art" outside the limits on the total number of prior art references, the orders in *Nuance* and *Leo* are fundamentally inconsistent with the parties' agreement here, which expressly states that "background" references are included the total number of prior art references. If Teva wished to use the orders from those cases, it should have proposed language consistent with those orders. Instead, it agreed to limit the number of prior art references used for "all purposes."

21.    Teva complaints about use of prior art in connection with its written description and enablement defenses are without merit. Both of those defenses focus primarily, if not exclusively, on the specification, not the prior art. Notably, Teva does not cite a single prior art references in the sections of its disputed issues of fact relating to its written description and enablement defenses. And Teva's concerns about the parties' agreement impacting its non-infringement defenses is even farther afield. Prior art has nothing to do with the infringement

inquiry, which compares the accused product to the claims, as construed. Teva has not articulated any legitimate concern that the streamlining order affects its non-infringement defenses.

22.     The parties have discussed further reducing the total number of asserted claims and prior art references but have been unable to reach agreement. For example, Teva contends that, consistent with D.I. 170, any further reduction in prior art references should only be for the purposes of obviousness. Plaintiffs believe that this case should be further narrowed by reducing both the number of asserted claims and the number of prior art references. Plaintiffs have proposed reducing the number of asserted claims to five and the number of prior art references to six; however, Plaintiffs believe that any additional case narrowing must limit the prior art used for all purposes, as set forth in D.I. 170. Permitting Teva to introduce prior art for "background" or as part of a technology tutorial will not meaningfully reduce the scope of the case because both parties will devote trial time to these "background" or "tutorial" references.

### E.     Pending Motions

23.     Defendant's Motion to Compel regarding Plaintiffs' response to Teva's Interrogatory ("ROG") Nos. 9-10, 14-15 and 18 and Request for Admission ("RFA") Nos. 4, 7, 9, 10, 12, 22, 27 and 29-30 (D.I. 99, D.I. 129).

24.     Plaintiffs' Motion for Costs and Fees Incurred in Responding to Teva's Motion to Compel Teva's RFA No. 11 Admitted (D.I. 259).

25.     Plaintiffs' Request for Clarification Regarding the Protective Order (D.I. 263).

26.     The parties' motions *in limine*, filed as part of this pleading.

## II.     FEDERAL JURISDICTION

27.     This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271 and 281-285; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Medicare Prescription Drug, Improvement, and Modernization Act of

2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003) ("MMA") (21 U.S.C. § 355(j) and 35 U.S.C.

§ 271(e)(5)). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338(a). No party contests subject matter jurisdiction and personal jurisdiction for

purposes of this action. Venue is not contested for the purposes of this action and is based on 28

U.S.C. §§ 1391(b) and (c) and § 1400(b).

## III.    FACTS

### A.    Uncontested Facts

28.    Per the agreement of the parties, the facts listed in **Exhibit 1** hereto are not contested

for purposes of trial. These stipulated facts require no proof at trial and will become part of the

evidentiary record at trial.

### B.    Contested Facts

29.    Plaintiffs' statement of the issues of fact that remain to be litigated is attached as

**Exhibit 2**.

30.    Defendant's statement of the issues of fact that remain to be litigated is attached as

**Exhibit 3**.

31.    If this Court determines that any issue identified in the statements of issues of fact

is more properly considered an issue of law, it should be so considered.

## IV.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

32.    Plaintiffs' statement of the issues of law that remain to be litigated is attached as

**Exhibit 4**.

33.    Defendant's statement of the issues of law that remain to be litigated is attached as

**Exhibit 5**.

34.    If this Court determines that any issue identified in the statements of issues of law

is more properly considered an issue of fact, it should be so considered.

## V.    BRIEF STATEMENT OF INTENDED PROOFS

35.    Plaintiffs' brief statement of intended proofs is set forth in **Exhibit 6**.

36.    Defendant's brief statement of intended proofs is set forth in **Exhibit 7**.

## VI.    WITNESSES

### A.    List of Witnesses the Parties Expect to Call

#### 1.    Expert witnesses

37.    In **Exhibit 8**, attached hereto, Plaintiffs identify the expert witnesses they intend to call to testify.

38.    In **Exhibit 9**, attached hereto, Defendant identifies the expert witnesses it intends to call to testify.

#### 2.    Non-expert witnesses

39.    In **Exhibit 8**, attached hereto, Plaintiffs identify the fact witnesses they intend to call to testify and state whether the witnesses will testify in person or by deposition. Defendant's objections to any identified witness are included in the Exhibit.

40.    In **Exhibit 9**, attached hereto, Defendant identifies the fact witnesses it intends to call to testify and states whether the witnesses will testify in person or by deposition. Plaintiffs' objections to any identified witness are included in the Exhibit.

41.    Any witness not listed in **Exhibits 8 and 9** will be precluded from testifying, absent good cause shown.

#### 3.    Agreements Regarding Presentation and Identification of Witnesses

42.    The parties will identify by email to the opposing parties the most current plan of the witnesses they intend to call, the order in which they intend to call them, and whether those witnesses will be called live or by deposition, by 7:00 p.m. ET two nights before the day on which

such witness will be called to testify. For example, if the party expects to conduct the examination on Thursday, notice should be given to the opposing party by 7:00 p.m. ET on Tuesday. The other parties shall identify any objections to such witness(es) by 8:00 p.m. ET the following day, *i.e.*, the night before the trial day on which the witness will be called to testify, and the parties shall meet and confer to resolve any objections by 9:00 p.m. ET that same evening. If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention prior to the beginning of the day on which the witness will be called to testify. To the extent there remains a dispute, the parties will jointly email Chambers by 7:30 a.m. ET the morning the witness is expected to testify to inform the Court there is an issue. Each party shall update its list of expected witnesses and exhibits by 7:00 p.m. ET at the end of each trial day.

43.    The presentation at trial will occur in the following order:

| Plaintiffs' Proposal: | Defendant's Proposal: |
|---|---|
| (1) Plaintiffs' Opening Statement | |
| (2) Defendant's Opening Statement | |
| **(3) Plaintiffs' Technical Tutorial and Case-in-Chief on Infringement**[5] | **(3) Plaintiffs' Technical Tutorial and Case-in-Chief on Infringement and Standing**[6] |
| **(4) Defendant's Technical Tutorial, Answering Case on Infringement, including the Reverse Doctrine of Equivalents defense, and Defendant's Case-in-Chief on Invalidity;** | **(4) Defendant's Answering Case on Infringement, including the Reverse Doctrine of Equivalents defense, and Standing;** |

[5]  Contrary to Teva's characterization, the issue of patent ownership does not implicate standing; it is a statutory requirement that is part of a prima facie case of infringement. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).

[6] The non-precedential case relied upon by Vifor, *Lone Star*, is inapposite in that it distinguished between constitutional and statutory standing requirements, and held that allegations of exclusionary rights and infringement are all that is required to meet the threshold for Article III standing, regardless of whether the elements of statutory standing have been met; whereas here, Vifor does not allege different exclusionary rights that confer constitutional versus statutory standing. It rests its standing, constitutional or otherwise, on the ownership right allegedly having been set forth in certain transactional documents.

| (5) **Plaintiffs' Rebuttal to Defendant's Answering Case on Infringement, including Teva' Reverse Doctrine of Equivalents defense, and Plaintiffs' Answering Case on Invalidity, including Secondary Considerations and Commercial Embodiment;** | (5) **Plaintiffs' Rebuttal to Defendant's Answering Case on Infringement, including the Reverse Doctrine of Equivalents defense, and Standing**<br><br>**[CLOSE of Plaintiffs' Infringement Case]** |
|---|---|
| (6) Defendant's Rebuttal to Plaintiffs' Answering case, including Secondary Considerations and Commercial Embodiment | (6) **Defendant's Technical Tutorial and Case-in-Chief on Invalidity;** |
| (7) Plaintiffs' Closing Argument | (7) **Plaintiffs' Answering Case on Invalidity, including Secondary Considerations and Commercial Embodiment** |
| (8) Defendant's Closing Argument | (8) Defendant's Rebuttal to Plaintiffs' Answering case, including Secondary Considerations and Commercial Embodiment |
| (9) Plaintiffs' Rebuttal Closing Argument | (9) Plaintiffs' Closing Argument |
| | (10) Defendant's Closing Argument |
| | (11) Plaintiffs' Rebuttal Closing Argument |

44.    The parties shall exchange a final list of witnesses they intend to call live by 12 noon ET on June 23, 2022. A party shall promptly provide notice if it will not call live a witness who is so identified on the list of trial witnesses.

45.    The parties will confer nightly to update opposing counsel before 9:00 p.m. ET as to the expected day that the party intends to complete its presentation of evidence.

**B.    Testimony by Deposition**

46.    The deposition testimony that Plaintiffs may offer into evidence is identified in **Exhibit 10**. The deposition testimony that Defendant may offer into evidence is identified in **Exhibit 11**. This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

Pursuant the parties' agreement, for any fact witness that a party proposes to call at trial by deposition, the parties reserve the right to use deposition testimony taken in either this case or in *Velphoro I*.

47.    With respect to those witnesses whom the parties have identified in **Exhibits 10 and 11** who will be called to testify live at trial, no deposition designations or counter-designations are permitted or required, except to the extent a witness testified at a deposition as a Rule 30(b)(6) corporate designee. However, for any witness called to testify live, such witness may be impeached with his or her deposition testimony given in this case or given in *Velphoro I*, or his or her trial testimony given in *Velphoro I*, and no advance notice to the opposing parties is required. Should a fact witness identified in **Exhibits 10 and 11** as testifying live at trial become unavailable under Fed. R. Evid. 804, the parties may designate specific pages and lines of transcript that they intend to read or play in lieu of the witness's appearance upon reasonable notice, and after establishing the unavailability of the witness to the Court's satisfaction to the extent another party challenges such claim.

48.    A party may rely on any of the opposing party's deposition designations as counter-designations. For convenience and sake of brevity, the parties have listed counter-designations in response to specific affirmative designations by the opposing party. To the extent a party withdraws any affirmatively-designated testimony, an opposing party may present its counter-designated testimony either: (a) in response to other testimony affirmatively designated by the party withdrawing such testimony, or (b) re-designate its counter-designated testimony as affirmative testimony. Similarly, a party may designate testimony identified as affirmative testimony in this Order as a counter-designation or counter-counter designation.

49.     For deposition testimony provided to the Court, the parties providing the designated testimony shall serve on opposing counsel the transcript page and line numbers of the deposition testimony they intend to introduce (*i.e.*, the subset of deposition designations already disclosed in **Exhibits 10 and 11**, which may include testimony designated as counter-counter designations, and any timely supplements thereto), by electronic mail by 9:00 a.m. ET on June 23, 2022. The opposing parties will identify any objections to the designated deposition testimony and any specific pages and lines from that deposition (*i.e.*, a subset of deposition designations already disclosed in **Exhibits 10 and 11**) to counter-designate by 9 a.m. ET on June 24, 2022. By 7 p.m. ET on June 24, 2022, the introducing party will identify any objections to the other party's counter-designated testimony. The parties shall meet and confer to resolve any objections to the designated testimony at 12 p.m. ET on June 25, 2022. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than 6:00 p.m. ET two calendar days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter of no more than two pages clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

50.     The designated deposition testimony will be offered to the Court as designated testimony that the parties play by video in Court or have read into the record. Affirmative designations will be counted against the trial time of party offering the witness, and counter designations will be counted against the trial time of the party offering the counter designation.

51.     All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

52.     When a party elects to play deposition designation excerpts, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given. The specific portions of the deposition shall be read or played in page order. If an exhibit is referenced in a deposition designation, the exhibit is admitted into evidence if it is included on the offering party's trial exhibit list and is not otherwise objected to, or is included on the joint trial exhibit list.

53.     When a party elects to call a witness to testify by deposition at trial, and to play the deposition during the trial proceeding, the party calling the witness shall provide the Court with an electronic copy of the transcript of the designations and counter-designations that will be read or played. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

54.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or examination (direct or cross) of an expert witness. Any deposition testimony may be used at trial for the foregoing purposes, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

**C.      Objections to Expert Testimony**

55.     The parties request that the Court rule at trial on objections to expert testimony, including as beyond the scope of expert disclosures, taking time from the losing party's trial presentation to argue and decide such objections. In the event of any such objection, the parties shall provide copies of that expert's report(s) and deposition testimony to the Court. However,

unless expressly moved and accepted into evidence, the expert report(s) and deposition testimony shall be used only for the purpose of ruling on objections to expert testimony offered at trial.

### D.    Stipulation as to Qualifications of *Velphoro I* Expert Witnesses Who Testified at Trial

56.    Subject to objection by an opposing party, and the pending motions, the parties have stipulated that each expert witness who previously testified at trial in *Velphoro I* without objection shall be deemed qualified as an expert without the need to be re-qualified at the *Velphoro II* trial with respect to the subject matter for which he or she was previously qualified in *Velphoro I*. Nothing in this paragraph shall permit an expert to offer opinions beyond those disclosed in his or her report(s) and deposition(s). This stipulation expressly does not apply to any new subject matter for which the expert was not previously qualified and accepted by the Court as an expert at the *Velphoro I* trial.

## VII.    EXHIBITS

### A.    Exhibits

57.    The parties' joint list of trial exhibits is attached as **Exhibit 12**, identified with JTX prefixes. Plaintiffs' list of trial exhibits is attached as **Exhibit 13**, identified with PTX prefixes. Defendant's list of trial exhibits is attached as **Exhibit 14**, identified with DTX prefixes. **Exhibit 14** contains Plaintiffs' objections to Defendant's trial exhibits, and **Exhibit 13** contains Defendant's objections to Plaintiffs' trial exhibits. The parties' respective keys to their objection codes are appended at the end of each exhibit.

58.    Plaintiffs' and Defendant's Exhibit Lists contain a number of exhibits from their *Velphoro I* exhibit list. Both parties have used the same exhibit number for the *Velphoro I* exhibits. The parties' *Velphoro I* exhibits include the *Velphoro I* exhibit sticker. The parties agree that the *Velphoro I* sticker is sufficient and that they need not re-sticker the exhibits for *Velphoro II*.

59.     Subject to the provisions of this Section VII.A, and the pending motions *in limine*, this pretrial order contains the maximum universe of exhibits to be used by a party at trial (apart from any exhibit to be used solely for impeachment or cross examination and not offered into evidence) as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted unless good cause is shown. The parties agree that non-English documents included on a party's exhibit list must be accompanied by a certified English translation.

60.     Once the pre-trial order is filed with the Court, modification of trial exhibits will be permitted until 6:00 p.m. ET on June 24, 2022, to the extent necessary to comply with any rulings made by the Court at the pre-trial conference. After that time, modification of trial exhibit lists will not be permitted except upon order of the Court for good cause shown, or upon agreement of the Parties.

61.     Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections that shall be disclosed pursuant to the procedures outlined in Paragraph 59. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission.

62.     Exhibits to be used solely for impeachment or cross-examination need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

63.     A party will provide a list of trial exhibits to be used in connection with direct examination by 7:00 p.m. ET two (2) calendar days before their intended use, and objections will be provided no later than 8:00 p.m. ET the night before their intended use. The parties will meet-and-confer at 9:00 p.m. ET that same night. If good faith efforts to resolve the objections fail, the

party objecting to the exhibits shall bring the issue to the Court's attention by emailing the judicial administrator by 7:30 a.m. ET the day on which the witness with whom the exhibit is to be used will be called to testify. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

64.   Each party will provide the Court with an electronic copy of all of its trial exhibits (PTX and DTX, respectively) in consecutive order.  Plaintiffs will also provide the Court with an electronic copy of all JTX exhibits in consecutive order. A party will provide the Court with an electronic copy of each trial exhibit to be used in connection with direct examination via email by 7:30 a.m. the day on which the witness with whom the exhibit is to be used will be called to testify. A party will provide the Court via email with an electronic copy of each trial exhibit that, using its best efforts, the party anticipates using in connection with cross-examination by the time the cross-examination of that witness begins. In the event that a trial exhibit is used in connection with a cross-examination that was not previously provided to the Court, the party will provide an electronic copy promptly after the close of that trial day. Each party will send direct and cross exhibits to the Court in a single email, and opposing counsel need not be copied on the email. Direct and cross exhibits will be provided to the other side before the examination begins.

65.   Exhibits not objected to that are used with a witness at trial will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony. Nothing herein shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

66.     The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side. Each party reserves the right to object to the relevance or admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

67.     The parties stipulate to the authenticity of each other's regulatory filings.

68.     Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original. Legible copies of United States patents and the contents of the Patent and Trademark Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

69.     The exhibit lists indicate whether each trial exhibit has previously been marked as a deposition and/or *Velphoro I* trial exhibit. To remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker.

70.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

**B.     Demonstrative Exhibits**

71.     The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order. Plaintiffs' demonstrative exhibits will be identified with PDX numbers, starting with PDX 1. Defendant's demonstrative exhibits will be identified with DDX numbers, starting at DDX 1.

72.     The parties will exchange demonstratives to be used in opening statements by 12:00 p.m. (noon) ET the day before opening statements, and any objections will be provided by 4 p.m. ET that same day. If there are objections that remain to be resolved, the parties shall meet and confer by 8:00 p.m. the night before opening statements, and will present any unresolved objections to the Court by emailing the judicial administrator by 7:30 a.m. ET on June 27. Reasonable non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to such use. Demonstratives to be used in opening statements will not be used by the opposing party prior to being used by the disclosing party.

73.     A party will provide demonstrative exhibits to be used in connection with direct examination by 7:00 p.m. ET two (2) days before their intended use, and objections will be provided no later than 8:00 p.m. ET the night before their intended use. The parties will meet-and-confer at 9:00 p.m. ET that same night. If good faith efforts to resolve the objections fail, the party objecting to the demonstrative shall bring its objections to the Court's attention by emailing the judicial administrator by 7:30 a.m. ET the day on which the witness with whom the demonstrative is to be used will be called to testify. Reasonable non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to such use. Demonstrative exhibits to be used in connection with a specific witness will not be used prior to that witness being called to testify.

74.     Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

75.     The party seeking to use a demonstrative exhibit in connection with direct examination will provide a color representation of the exhibit to the other side in PDF. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side in an appropriate electronic format to view the video or animation. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

76.     These provisions regarding demonstrative exhibits do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

77.     A party will provide the Court with an electronic copy of each demonstrative exhibit to be used in connection with direct examination via email by 7:30 a.m. ET the day on which the witness with whom the demonstrative exhibit is to be used will be called to testify. A party will provide the Court via email with an electronic copy of each demonstrative exhibit that, using its best efforts, the party anticipates using in connection with cross-examination by the time the cross-examination of that witness begins. In the event that a demonstrative is used in connection with a cross-examination that was not previously provided to the Court, the party will provide an electronic copy promptly after the close of that trial day. Each party will send direct and cross demonstratives to the Court in a single email, and opposing counsel need not be copied on the email.  Direct and cross demonstratives will be provided to the other side before the examination begins.

## VIII.   BIFURCATED TRIAL

78.     All issues will be tried without bifurcation.

IX.     **MOTIONS IN** *LIMINE*

79.     There are six motions in *limine* pending.

X.      **DISCOVERY**

80.     Discovery is complete, subject to Dr. Wright's Supplemental Reply Report, deposition, and any related issues pursuant to the Court's May 16, 2022 Order (D.I. 276). Defendant reserves the right to additional discovery regarding Dr. Wright's Supplemental Reply Report to the extent necessary, as well as all objections thereto.  Plaintiffs reserve the right to object to any further discovery regarding Dr. Wright's Supplemental Reply Report.

XI.     **NUMBER OF JURORS**

81.     This is a non-jury trial.

XII.    **NON-JURY TRIAL**

82.     The parties propose the following post-trial briefing schedule:

        a.      Deadlines: Opening Briefs and Findings of Fact due August 1, 2022; Responsive Briefs and Responsive Findings of Facts due August 29, 2022; Reply Briefs due September 12, 2022; Hyperlinked briefs to be delivered to the Court on September 14, 2022.

        b.      **Page Limits:**

                (1)     **Plaintiffs' Position**:

                        (a)     Opening Briefs:  Maximum 30 pages regarding invalidity and 20 pages regarding infringement;

                        (b)     Responsive Briefs:  Maximum 30 pages regarding invalidity and 20 pages regarding infringement;

                        (c)     Reply Briefs:  Maximum 10 pages regarding invalidity and 7 pages regarding infringement.

(2)    **Defendant's Position**: Opening Briefs (maximum 40 pages regarding invalidity and 25 pages regarding infringement); Responsive Briefs (maximum 40 pages regarding invalidity and 25 pages regarding infringement); Reply Briefs (maximum 15 pages regarding invalidity and 10 pages regarding infringement).

83.    The parties agree, subject to the Court's approval, that the *Velphoro I* trial record will be considered to be part of the trial record in this case (subject to and including all objections raised in *Velphoro I* and reservation of rights on appeal). Specifically, the parties agree that trial testimony from *Velphoro I* will be considered part of the trial record in this action, exhibits that were admitted in *Velphoro I* as reflected in the Court's final list of admitted exhibits will be deemed admitted in this action, and demonstratives lodged in *Velphoro I* will be deemed to have been lodged in this action.

## XIII.   LENGTH OF TRIAL

84.    The trial will be four days and will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, any closing argument, and both sides' argument on any motions or objections a party raises to another party's witness testimony, exhibits, or demonstrative exhibits.

85.    The Courtroom Deputy will keep a running total of trial time used by counsel. If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

86.    Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request the following for trial presentation:

a.    **Plaintiffs' Position**: Subject to the Court's acceptance of the parties' proposal regarding use of the *Velphoro I* trial record (*see* Paragraph 83), 16 hours for trial presentation with the time equally split between Plaintiffs and Defendants. Plaintiffs note that Teva

24

previously recognized that "[t]his case involves continuation patents which disclose and claim nearly identical subject matter as the '251 patent." D.I. 176, at 6. Moreover, Teva has made the strategic decision to contest issues in this action that were undisputed in *Velphoro I*. For example, Teva currently disputes that ████████████████████ ████████████████████████████████████ Similarly, Teva currently contests ownership of the patents-in-suit but stipulated to ownership in *Velphoro I* based on the same patent assignment agreement.

b.  **Defendant's Position**: 26 hours for trial presentation with the time equally split between Plaintiffs and Defendant. Teva notes that Plaintiffs' proposal does not account for the practical realities, logistics, and time burdens of having to address the current number of ten (10) asserted claims (i.e., more than double the four (4) asserted claims in *Velphoro I*) including, for example, a patent claim to the "beta" form, that Plaintiffs dropped before the *Velphoro I* trial but has resurrected in *Velphoro II*, which will require five (5) new expert witnesses to testify at trial, ████████████████████ ████████████████████████████████████ Teva further notes that its stipulation in *Velphoro I* as to ownership and standing to sue was given in the absence of key ownership-related documents that Plaintiffs did not produce until this case, as well as in reliance on an eve-of-trial sworn declaration by Plaintiffs' corporate representative (Mr. DeLoach) on ownership issues which he has subsequently admitted in *Velphoro II* to having no personal knowledge of (*see, e.g.*, Teva MIL 3).

## XIV.  COURTROOM LIVESTREAM

87.    In light of ongoing Covid concerns and in order to minimize both the need for party representatives to travel internationally and the number of people in the courtroom at any one time, Plaintiffs request that the Court permit a remote livestream of the trial to enable people who are not physically present in the courtroom to view the trial.[7]

## XV.  AMENDMENTS OF THE PLEADINGS

88.    There are no amendments to the pleadings desired by any party.

---

[7]    Should the Court order that the courtroom be sealed at any point during trial, the parties will take steps to ensure that only individuals who are qualified under the Protective Order have access to the livestream.

## XVI.   SETTLEMENT

89.    The parties hereby certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement.

Dated: June 6, 2022

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs Vifor Fresenius
Medical Care Renal Pharma, Ltd. and
Vifor Fresenius Medical Care Renal
Pharma France S.A.S.*

OF COUNSEL:

Raymond N. Nimrod
Steven C. Cherny
Matthew A. Traupman
Geoffrey A. Kirsner
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Lauren N. Martin
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nancy Zhang
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
50 California St
San Francisco, CA 94111
(415) 875-6600

Respectfully submitted,

SHAW KELLER LLP

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant/Counterclaim
Plaintiff Teva Pharmaceuticals USA, Inc.*

OF COUNSEL:

Scott J. Bornstein
Richard C. Pettus
Julie P. Bookbinder
Jonathan D. Ball
Cort W. Welch
Giancarlo Scaccia
Jonathan P. Presvelis
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

Aimee Housinger
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, TX 77002
(713) 374-3500

Benjamin D. Witte
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED:

_____
The Honorable Maryellen Noreika